**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

**JODIE MESSINA o/b/o**
**HELEN G. MESSINA, deceased,**

             **Plaintiff,**

     - against -

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

            **Defendant.**

-------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**OPINION AND ORDER**

**09 Civ. 2509 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/09

## I.   INTRODUCTION

       Jodie Messina ("Messina"), on behalf of her mother, the late Helen G.

Messina ("Helen Messina"), brings this action pursuant to the Social Security Act,[1]

seeking judicial review of a final decision by the Commissioner of Social Security

("Commissioner") denying her mother's claim for disability insurance benefits

("DIB") and widow's insurance benefits.  Messina has moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Messina

contends that the Administrative Law Judge's ("ALJ") finding that Helen Messina

---

[1]    *See* 42 U.S.C. § 405(g).

was not disabled and therefore not entitled to benefits during the period under review is not supported by substantial evidence and contains errors of law, including: (1) the ALJ failed to set forth his residual functional capacity finding in a sufficient manner; (2) the ALJ's determination that Helen Messina could perform her past relevant work is not supported by substantial evidence; (3) the ALJ erred in assessing Messina's credibility regarding her subjective complaints of pain; and (4) the ALJ failed to develop the administrative record regarding Helen Messina's medical history. The Commissioner cross-moves under Rule 12(c) to have his decision affirmed. For the following reasons, the Commissioner's motion is granted and the ALJ's decision is affirmed.

## II.   BACKGROUND

### A.   Procedural History

On January 18, 2006, Messina filed applications for widow's insurance benefits and DIB, alleging disability from July 1, 1997.[2] To be eligible for DIB, Helen Messina was required to show disability prior to the date she was last insured for such benefits, June 30, 2001.[3] For widow's benefits, Helen Messina was required to demonstrate disability between July 1, 1997, the date she

---

[2]     *See* Transcript of the Administrative Record ("Tr."), filed as part of the Commissioner's Answer pursuant to 42 U.S.C. § 405(g), at 58-63.

[3]     *See id.* at 22.

2

was last entitled to survivor's benefits, through November 30, 2002, seven years thereafter.[4]

Helen Messina's applications were denied,[5] and a requested hearing took place on January 25, 2008, where Helen Messina was represented by her attorney.[6] After the hearing, ALJ Brian W. Lemoine determined that Helen Messina was not disabled under the Social Security Act.[7] This decision became the Commissioner's final decision after the Appeals Council denied Helen Messina's request for review on January 30, 2009.[8]

### B. The Administrative Record

The administrative record consists of non-medical evidence, medical evidence, and vocational expert testimony from the January 25, 2008 hearing.

### 1. Non-Medical Evidence

Messina alleges disability due to asthma, emphysema, and Chronic Obstructive Pulmonary Disease ("COPD") as of July 1, 1997.[9] She also claims to

---

[4]  *See id.* at 21. *See also* 20 C.F.R. § 404.335(c)(1).

[5]  *See* Tr. at 33-36, 48-51.

[6]  *See id.* at 396-431.

[7]  *See id.* at 27.

[8]  *See id.* at 4-6.

[9]  *See id.* at 123.

3

have suffered from back pain and panic attacks.[10]  Prior to her disability, Helen

Messina worked at a family-owned deli for over thirty years.[11]  While serving as

manager of the deli, Helen Messina made food, stocked shelves, and cleaned the

store.[12]  Helen Messina sold the deli in 1997 as a result of her alleged disability.[13]

Helen Messina also worked briefly in 1999 as an assistant manager of

a grocery store, and in 2002 and 2003 as a cashier at a deli.[14]  To perform her most

recent job as a cashier, Helen Messina walked between two to four hours and stood

for four hours during a shift.[15]  She also claimed to lift up to twenty pounds at this

job, as well as frequently lifting ten pounds.[16]  In describing her daily activities as

of May 2006, Helen Messina stated that she performed housework, prepared meals,

did crafts, and went shopping on the weekends.[17]

---

[10]     *See* Plaintiff's Memorandum of Law in Support of a Motion for
Judgment on the Administrative Record and Pleadings Pursuant to Rule 12(c) of
the Federal Rules of Civil Procedure ("Pl. Mem."), at 6.

[11]     *See* Tr. at 404.

[12]     *See id.* at 77.

[13]     *See id.* at 406-407.

[14]     *See id.* at 76.

[15]     *See id.* at 79, 125.

[16]     *See id.* at 125.

[17]     *See id.* at 162-169.

### 2.    Medical Evidence[18]

Helen Messina was treated by Dr. Quasar A. Choudhury from 1995 until her death on April 15, 2008.[19]  Dr. Choudhury's treatment notes from July 1997 through November 30, 2002, show that Helen Messina's lungs showed no sign of pulmonary disease during that time.[20]  Helen Messina was prescribed various medications during this period – it is difficult to determine from the record, however, what medications were prescribed, and for what reasons.[21]  In 2006, Helen Messina reported taking a number of medications, for COPD, allergies and asthma, plaque in her legs, cholesterol, anxiety, and acid reflux.[22]  Helen Messina did not report taking any medication for pain.[23]

Medical evidence was also submitted regarding Helen Messina's back pain during the relevant time period.  On August 7, 2001, a medical evaluation

---

[18]    Much of the medical evidence contained in the administrative record post-dates the time period relevant to this case and will not be described herein.

[19]    *See* Pl. Mem. at 6.

[20]    *See* Tr. at 327, 334, 368-387.

[21]    *See id.* at 368-387.

[22]    *See id.* at 152.

[23]    *See id.*

resulted in findings suggesting popliteal disease.[24]  On August 31, 2001, a different

medical assessment noted marked intervertebral disc space narrowing and

straightening of the lordosis consistent with spasm.[25]  On May 10, 2002, an

examination again showed marked narrowing of intervertebral disc space, as well

as mild disc bulging.[26]

### 3.    Vocational Expert Testimony

Donald Slive, a vocational expert, testified at Helen Messina's

January 25, 2008 hearing.[27]  Slive noted that Helen Messina's past work satisfied

several definitions in the Dictionary of Occupational Titles.[28]  Slive stated that a

hypothetical individual of the same age, education, and work history as the

claimant, that was limited to light exertional work, and that should avoid all

concentrated exposure to dust, odors, gases, or other air pollutants, could perform

Helen Messina's past work as a cashier.[29]

---

[24]    *See id.* at 322.

[25]    *See id.* at 320.

[26]    *See id.* at 318.

[27]    *See id.* at 425.

[28]    *See id.* at 427.

[29]    *See id.* at 429.

### C.    The ALJ's Decision and Analysis

On June 28, 2008, the ALJ concluded that Helen Messina was not disabled as defined in the Social Security Act during the period she was eligible for benefits.[30]  The ALJ determined that "prior to the expiration of disability insured status and the end of the widow's prescribed period, [Helen Messina] had the residual functional capacity to perform light work . . . but was unable to work in an environment containing high level of dust, fumes, chemical odors or other airborne pulmonary irritants"[31] and that Helen Messina was "capable of performing past relevant work as a cashier."[32]

In making his determination, the ALJ noted that "the medical record prior to the expiration of disability insured status and the end of the widow's prescribed period is, at best, sparse in nature and tends to suggest [Helen Messina] had a lesser degree of symptoms and a higher level of functioning than alleged."[33] He noted that during the covered period – July 1, 1997 and November 30, 2002 – Dr. Choudury's treatment records showed only intermittent complaints of back

---

[30]     See id. at 27.

[31]     Id. at 24.

[32]     Id. at 26.

[33]     Id. at 24.

pain[34] and failed to disclose symptoms usually associated with an acute pulmonary problem.[35]  The ALJ also noted that Helen Messina herself indicated that she regularly engaged in a wide range of daily activities as late as March 2006, and that she had performed work activities since 1997 that demonstrated that "any pain and pulmonary deficits she may have experienced were not at such a level as to preclude at least some degree of sustained functioning."[36]

The ALJ did not accord much weight to a March 2006 report from Dr. Choudhury indicating that Helen Messina had major functional limitations because the ALJ concluded the report was not consistent with Dr. Choudhury's treatment records.[37]  In addition, although the ALJ tried to clarify Helen Messina's level of functioning prior to the expiration of her benefits eligibility, Dr. Choudhury merely provided a general response that "did not specify when [Helen Messina's] symptoms or the resultant limitations actually arose or whether it is reasonable to assume they existed at any point during the periods at issue in this case."[38]

The ALJ concluded that Helen Messina retained the residual

---

[34]     *See id.*

[35]     *See id.* at 25.

[36]     *Id.*

[37]     *See id.* at 26.

[38]     *Id.*

8

functional capacity for light work activity during the relevant period.  He noted

that Helen Messina "remained able to lift lighter objects, such as those weighing up

to twenty pounds" and that "there are no positive findings that show [Helen

Messina] was unable to sit, stand and walk throughout the eight hour workday."[39]

Giving great weight to the opinion of the vocational expert, the ALJ determined

that Helen Messina was able to perform her past work as a cashier during the

relevant period, as "this job, which is basically light in nature, does not require any

heavy lifting and is not performed in an environment where the claimant has

concentrated exposure to pulmonary irritants."[40]

## III.   LEGAL STANDARD

### A.   Substantial Evidence Standard

When examining the ALJ's decision in a disability benefits case, "'[i]t

is not [this Court's] function to determine de novo whether [a claimant] is

disabled.'"[41]  Although the ALJ must set forth the crucial factors supporting his

---

[39]     *Id*. at 25.

[40]     *Id*. at 26.

[41]     *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  *Accord Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

decision with sufficient specificity,[42] a district court must not disturb the ALJ's decision if "correct legal standards were applied" and "substantial evidence supports the decision."[43] "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[44]

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."[45] Even if there is also substantial evidence for the plaintiff's position, if substantial evidence exists to support the Commissioner's decision, the decision must be affirmed.[46] Moreover, the Commissioner's findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from

---

[42]    *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

[43]    *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). *Accord Halloran*, 362 F.3d at 31.

[44]    *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

[45]    *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[46]    *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). *See also Morillo v. Apfel*, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001)

the Commissioner's analysis.[47]

## B.    Five-Step Process

Pursuant to the Social Security Act, the Social Security
Administration ("SSA") has established a five-step sequential evaluation process
for determining whether a claimant is disabled.[48]  At step one, the ALJ must
determine whether the claimant is engaging in substantial gainful work activity
("SGA").[49]  Generally, if the claimant has earnings from employment or
self-employment above a specific level set out in the SSA's regulations, it is
presumed that she is not disabled given her ability to engage in SGA.[50]  Only if the
claimant is not engaging in SGA does the analysis continue.

At step two, the ALJ must determine whether the claimant has a
medically determinable impairment, or combination of impairments, that is
"severe."[51]  An impairment or combination thereof is "severe" within the meaning
of the regulations if it significantly limits the claimant's ability to perform basic

---

[47]    *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

[48]    *See* 20 C.F.R. § 404.1520(a).

[49]    *See id.* § 404.1520(a)(4)(i).

[50]    *See id.* § 404.1520(b).

[51]    *Id.* §§ 404.1520(a)(4)(ii), (c).

work-related activities.[52]  An impairment is not "severe" when the impairment is

expected to last for less than twelve consecutive months. [53]  If the claimant has a

severe impairment or combination thereof, the analysis must proceed.

At step three, the ALJ determines whether the claimant's impairment

or combination thereof meets or medically equals the criteria of a listed

impairment.[54]  If the impairment is contained in the Listings, the claimant is

considered disabled.[55]  If not, the analysis continues.

Before proceeding to step four, the ALJ must first determine the

claimant's residual functional capacity ("RFC"),[56] which is her ability to do

physical and/or mental work-related activities on a sustained basis despite

limitations from impairments.  In making this finding, the ALJ must consider all of

---

[52]     *Id.* 404.1520(c).

[53]     *Id.* § 404.1509.

[54]     *See id.* 404.1520(a)(4)(iii); *id.* Pt. 404, Subpt. P, App. 1 (the "Listings"). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *See* 20 C.F.R. § 404.1525(a) (the purpose of the Listings is to describe impairments "severe enough to prevent an individual from doing any gainful activity . . . .").

[55]     *See id.* § 404.1520(d).

[56]     *See id.* § 404.1520(e).

the claimant's impairments, including any non-severe impairments.[57]

At step four, the ALJ must determine whether the claimant has the RFC to perform any past relevant work.[58]  Past relevant work refers to SGA that the claimant has done in the past fifteen years.[59]  If the claimant is unable to do any past relevant work, the analysis proceeds.

At the last step of the evaluation, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education and work experience.[60]  If the claimant is able to do other work, she is not disabled.

Although the claimant generally continues to have the burden of proving disability, a limited burden of production shifts to the SSA at this final step.  To support a finding that the claimant is not disabled at this step, the SSA must provide evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can perform, given her RFC, age, education and work experience.[61]  In making this determination, the ALJ must consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical

---

[57]    *See id.*

[58]    *See id.* §§ 404.1520(a)(4)(iv), (f).

[59]    *See id.* § 404.1560(b)(1).

[60]    *See id.* §§ 404.1520(a)(4)(v), (g).

[61]    *See id.* §§ 404.1520(g), 404.1560(c).

opinions based on such facts; (3) subjective evidence of pain or disability testified

to by the claimant or others; and (4) the claimant's educational background, age,

and work experience.'"[62]  The ALJ may give varying weight to these factors, "but

the expert opinion of a claimant's treating physician is entitled to extra weight, and

in the absence of contradictory evidence, is conclusive."[63]

## IV.   DISCUSSION

### A.   Sufficiency of the ALJ's Residual Functional Capacity Finding

Messina claims the ALJ's RFC finding is insufficient because it fails

to provide a function-by-function assessment of Helen Messina's ability.[64]  In

addition, Messina claims that the ALJ made a finding contrary to the RFC

---

[62]      *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

[63]      *Mongeur*, 722 F.2d at 1037 (citations omitted).

[64]      *See* Social Security Ruling ("S.S.R.") 96-8P, 1996 WL 374184, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996) ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). *See also Banks v. Astrue*, No. 06 Civ. 1428, 2009 WL 2482140, at *6 (S.D.N.Y. Aug. 13, 2009) ("In assessing RFC, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity.") (quotation marks and citations omitted).

assessment completed by Helen Messina's treating physician, indicating a RFC of

less than sedentary, when no controverting medical evidence to that assessment

existed.

   While the Second Circuit has not specifically addressed the

requirement of a function-by-function assessment,[65] other circuits have held that

although a function-by-function analysis is desirable, the ALJ's written opinion

need not discuss each function, especially those functions for which no limitation

is alleged.[66] Within the Southern District of New York, courts have reached

different conclusions as to whether a function-by-function analysis is required or

merely desirable.[67]

---

  [65] *See Wood v. Commissioner of Soc. Sec.*, No. 06 Civ. 157, 2009 WL
1362971, at *6 (N.D.N.Y. May 14, 2009).

  [66] *See Delgado v. Commissioner of Soc. Sec*, 30 Fed. App'x 542, 547-48
(6th Cir. 2002); *Bencivengo v. Commissioner of Soc. Sec.*, 251 F.3d 153 (Table)
(3d Cir. 2000).

  [67] *See, e.g.*, *Novak v. Astrue,* No. 07 Civ. 8435, 2008 WL 2882638, at *3
(S.D.N.Y. July 25, 2008) ("Although the Second Circuit has not specifically
addressed this question, several courts that have held that the function-by-function
requirement of SSR 96-8p does not apply to the A.L.J."); *Casino-Ortiz v. Astrue*,
No. 06 Civ. 155, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007) ("'Although
a function-by-function analysis is desirable, SSR 96-8p does not require [ALJ]s to
produce [ ] a detailed statement in writing.'") (quoting *Burrows v. Barnhart*, No.
03 Civ. 342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007) (quotation marks
and citations omitted)). *But see Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL
470572, at *9 (S.D.N.Y. Jan. 21, 2003) ("Under the regulations, the ALJ also must
analyze a claimant's RFC on a function-by-function basis.").

Here, the ALJ specifically addressed most of Helen Messina's functions.  He stated that Helen Messina "remained able to lift lighter objects, such as those weighing up to twenty pounds" and that "there are no positive findings that show [Helen Messina] was unable to sit, stand and walk throughout the eight hour workday."[68]  In addition, the ALJ noted that "the normal work breaks and lunch period indigenous to substantial gainful activity would have afforded the claimant the opportunity to change positions or rest should any such need have arisen as the result of her impairments."[69]  While the ALJ did not address every function individually, no evidence was submitted indicating that Helen Messina was limited in any of the manipulative or postural functions, such as reaching, stooping or crouching, during the relevant time period.[70]

Messina also claims that the ALJ failed to consider the "'nature and extent of the [claimant's] physical limitations.'"[71]  The ALJ's decision, however,

---

[68]     Tr. at 25.

[69]     *Id.*

[70]     While Dr. Choudhury's assessment of Helen Messina's ability to do work related activity does note that she was limited in some of these functions, this assessment is from 2007, five years after the expiration of her benefit eligibility. *See id.* at 190-196.  The burden of proving disability during the relevant time period is on the claimant.  *See Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981).

[71]     Pl. Mem. at 9 (quoting 20 C.F.R. § 404.1545(b)).

demonstrates that he did engage in such consideration.  The ALJ searched Helen

Messina's medical records from the relevant period, but found only intermittent

complaints of back pain and no evidence of symptoms typically associated with an

acute pulmonary problem.[72]  In addition, the ALJ found that Helen Messina

continued to engage in a wide range of daily activities, including vacuuming and

mopping, through at least March 2006, well after the relevant time period.[73]

      The ALJ's considerations of relevant evidence, including medical

records, work history, and daily activities, as well as his specific determinations

regarding many of Helen Messina's functions, provide sufficient support of his

RFC determination.

### B.  Helen Messina's Ability to Perform Her Past Relevant Work

      Messina claims that the ALJ's decision that she could perform her

past relevant work as a cashier is not supported by substantial evidence.

Specifically, Messina claims that the ALJ never adequately determined or

described Helen Messina's past relevant work, and that the ALJ did not inquire

into the relevant physical and mental demands of Helen Messina's past relevant

work.

---

[72]    *See* Tr. at 24-25.

[73]    *See id*. at 25.

The ALJ made a specific and substantial inquiry into Helen Messina's past work.[74] *First*, he noted that Helen Messina described her past work as requiring "her to stand/walk throughout the day" and involving "only short periods of sitting and lifting of light objects."[75] *Second*, the ALJ obtained the services of a vocational expert, who opined that Helen Messina's past work as a cashier was basically unskilled in nature and required the ability to perform light exertional activity.[76] *Third*, the ALJ posed a hypothetical question to the vocational expert about whether a person with Helen Messina's conditions could perform her past

---

[74]    *See id.* at 26.  *See also* S.S.R. 82-62, 1982 WL 31386, *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General* (S.S.A. 1982) ("Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.").

[75]    Tr. at 26.  *See also id.* at 77 (describing requirements of Helen Messina's past cashier job, including operating slicers, cleaning, preparing food, and writing daily reports, and noting requirement to walk and stand between four and eight hours a shift); S.S.R. 82-62 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.").

[76]    *See* Tr. at 26.  *See also* 20 C.F.R. § 404.1560(b)(2) (an ALJ "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [the ALJ] need[s] to help [the ALJ] determine whether [the claimant] can do [the claimaint's] past relevant work, given [the claimant's] residual functional capacity").

18

work.[77]  After examining this hypothetical, the vocational expert testified "the

claimant retains the ability to perform her past work as a cashier both as she

performed it in the past and as it is generally required by employers throughout the

national economy."[78]

           While the ALJ did not accord controlling weight to the assessment of

Dr. Choudhury that Helen Messina could perform less then sedentary work, it is

the Commissioner who is responsible for making the ultimate determination of the

claimant's disability.[79]  The opinion of a treating physician is not controlling

"[w]hen other substantial evidence in the record conflicts with the treating

physician's opinion."[80]  The ALJ provided a number of reasons why he discounted

Dr. Choudhury's statement that Helen Messina had COPD prior to November 30,

2002.  *First*, the ALJ noted that Dr. Choudhury's report in 2006 was not consistent

---

[77]    *See* Tr. at 429.  *See also* 20 C.F.R. § 404.1560(b)(2) ("[A] vocational expert or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.").

[78]    Tr. at 26.

[79]    *See* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that [claimant] is 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [claimant] is disabled.").

[80]    *Snell*, 177 F.3d at 133.

with his own treatment records, which did not disclose significant findings regarding pulmonary disease during the period at issue.[81] *Second*, the ALJ attempted to obtain clarification from Dr. Choudhury regarding Helen Messina's limitations during the relevant time period, but Dr. Choudhury's conclusory response "did not specify when [Helen Messina's] symptoms or the resultant limitations actually arose or whether it is reasonable to assume they existed at any point during the periods at issue in this case."[82]

Becuase the ALJ considered the relevant demands of Helen Messina's past work and provided substantial support for his decision to not accord controlling weight to Dr. Choudhury's opinion, the ALJ's determination of Helen Messina's ability to perform her past relevant work is supported by substantial evidence.

C.   **The ALJ's Assessment of Helen Messina's Credibility Regarding Her Subjective Complaints of Pain**

Messina claims that the ALJ erred in assessing her subjective complaints of pain by making independent determinations without reference to medical evidence, failing to properly weigh evidence supporting Helen Messina's claims,  inappropriately considering Helen Messina's daily activities, and failing to

---

[81]   *See* Tr. at 26.

[82]   *Id*.

take account of Helen Messina's prior work history.

The ALJ's credibility evaluation is better supported than Messina

contends.[83] In determining that Helen Messina's subjective complaints were not

credible to any incapacitating extent during the relevant time period, the ALJ

specifically referred to medical evidence, and found that it failed to support Helen

Messina's complaints.[84] The ALJ also considered Helen Messina's complaints of

pulmonary disease, asthma, and shortness of breath, but again relied on medical

evidence in deciding to accord these complaints little weight.[85]

---

[83]    *See* Tr. at 24-25.

[84]    *See id.* at 24 ("More importantly, none of the treatment notes
contained in the record from the July 1, 1997 alleged onset date through November
30, 2002 reveal the presence of any spinal muscle spasm, gait abnormalities, disuse
muscle atrophy or deficits in motor, sensory or reflex functions, such as that
usually associated with chronic or acute spinal impairments. . . . Dr. Quasar
Choudhury's treatment records covering the period from the July 1997 alleged
onset date through the November 30, 2002 end of the widow's prescribed period
fail to disclose any consistent complaints of back pain . . . but, instead, show any
such complaints verbalized by the claimant were only intermittent in nature."). *See
also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful
indicator to assist [the ALJ] in making reasonable conclusions about the intensity
and persistence of [the claimant's] symptoms and the effect those symptoms, such
as pain, may have on [the claimant's] ability to work.").

[85]    *See* Tr. at 24-25. ("[C]hest x-rays in July 1999 and April 2001 failed
to adduce any evidence of active pulmonary disease and, instead, found [Helen
Messina's] lungs were basically within normal limits . . . . [A] review of Dr.
Choudhury's treatment records fail to disclose the claimant had any significant
wheezing, rales, rhonchi or respiratory distress, such as usually associated with an
acute pulmonary problem, during the periods at issue in this case.").

21

Contrary to Messina's assertion, it was proper for the ALJ to consider Helen Messina's daily activities in determining credibility.[86] The ALJ reasonably determined that Helen Messina's testimony that she engaged in a "wide range of daily activities which includes shopping, driving her car, vacuuming her house, mopping her floors, preparing meals and paying her household bills" suggested that she "had a greater level of mobility and endurance than contended."[87] Helen Messina's report of these daily activities come from a March 2006 questionnaire, and the ALJ noted that there was no contention that Helen Messina was unable to perform these activities during the earlier period when she was actually eligible for disability benefits.[88]

Messina also claims that the ALJ erred by failing to properly consider Helen Messina's work history in making his credibility determination. While it is true that "a good work history may be deemed probative of credibility,"[89] failure to take account of work history does not necessarily render an ALJ's credibility

---

[86]     *See* 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to [a claimant's] symptoms, such as pain, which [an ALJ] will consider include . . . [a claimant's] daily activities. . . .").

[87]     Tr. at 25.

[88]     *See id*.

[89]     *Schaal*, 134 F.3d at 502.

assessment erroneous.  As previously discussed, the ALJ provided substantial

support for his credibility assessment.  He also briefly addressed Helen Messina's

work history.[90]  In addition, the record indicates that Helen Messina worked for

brief periods twice during the period of benefits coverage.[91]  Even if the ALJ failed

to consider Helen Messina's work record as a factor in his credibility

determination, it is harmless error, as substantial evidence in the record supports

the ALJ's credibility assessment.

### D.    The ALJ's Duty to Develop the Administrative Record

Messina contends that the ALJ failed in his duty to "'affirmatively

develop the record in light of the essentially non-adversarial nature of a benefits

proceeding.'"[92]  As Messina notes, this duty exists even if the claimant is

represented by counsel.[93]

---

[90]     *See* Tr. at 25 ("Furthermore, even though the claimant may not have
engaged in substantial gainful activity after the alleged onset date, she certainly did
perform work activities which show any pain and pulmonary deficits she may have
experienced were not at such a level as to preclude at least some degree of
sustained functioning.").

[91]     *See id*. at 76 (indicating employment as an assistant manager of a
grocery store in January 1999 and as a cashier and cook in November 2002).

[92]     *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v.
Commissioner of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

[93]     *See id*.

23

Contrary to Messina's assertions, the ALJ fulfilled his duty to affirmatively develop the record.  During the January 25, 2008 hearing, the ALJ gave Helen Messina opportunities to discuss the symptoms that Messina claims were overlooked, including back pain and difficulty breathing.[94]  The record contains a great deal of evidence regarding these symptoms, including treatment notes from Dr. Choudhury dating back to 1995,[95] and the results of various diagnostic tests.[96]

However, the administrative record was lacking medical records documenting Helen Messina's level of functioning prior to the expiration of her benefits eligibility on November 30, 2002.  The ALJ made an affirmative attempt to develop this portion of the record.[97]  Dr. Choudhury's initial response, however, indicated that Helen Messina's work limitations were first present in 2005, after

---

[94]     *See* Tr. at 407-408 (discussing back pain), 409 (discussing chest pain), 411-12 (discussing difficultly breathing).

[95]     *See id.* at 336-387.

[96]     *See id.* at 310 (results of chest x-rays), 318 (results of MRI of Helen Messina's spine), 329 (results of persantine stress test checking for shortness of breath and chest tightness), 334 (results of radiographic examination of Helen Messina's chest).

[97]     *See id.* at 154-161 (requesting that Dr. Choudhury provide all medical records on Helen Messina, and providing a form to be filled out regarding Helen Messina's ability to work).

24

the expiration of her benefits eligibility.[98]  Subsequently, the ALJ sent Dr.

Choudhury a second letter requesting that he specifically address Helen Messina's

functional impairments prior to the expiration of her eligibility for benefits in

2002.[99]  Dr. Choudhury's response stated only that "[Helen Messina] had been

suffering from COPD before 6/30/02."[100]  This response did not describe any

functional limitations that Helen Messina may have experienced during the

relevant time period.  By repeatedly attempting to fill in gaps in the medical

evidence, the ALJ fulfilled his affirmative duty to develop the record.[101]

---

[98]     *See id.* at 195.

[99]     *See id.* at 187 (the letter stated: "The specific issue is Mrs. Messina's functional impairments as of or prior to either June 30, 2001 or December 31, 2002.  Can you please assess her functioning as of either of those dates, based either on your memory of your treatment of her or your review of her clinical treatment records.").

[100]    *Id.* at 395.

[101]    *See Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990) ("We have repeatedly stated that when the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, he should direct a *pro se* claimant to obtain a more detailed statement from the treating physician.").  Notably, Helen Messina was represented in her claim, and as such, the ALJ was subject to a less stringent requirement to develop the record.  *Id.* at 11 ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (quotation marks omitted).

## V.    CONCLUSION

A careful examination of the record shows that the ALJ's decision is supported by substantial evidence. Moreover, the ALJ properly assessed Helen Messina's credibility and fulfilled his duty to develop the record. For these reasons, Messina's motion is denied, the Commissioner's motion is granted and the ALJ's decision is affirmed. The Clerk of the Court is directed to close these motions [Docket Nos. 7 & 9] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 21, 2009

26

- Appearances -

**For Plaintiff:**

Gary J. Gogerty, Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd PLLC
555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553
(845) 561-0550

**For Defendant:**

Susan C. Branagan
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2804